Eric Nielson #5327
Laura Nielson #15008
G. ERIC NIELSON & ASSOCIATES
4790 S. Holladay Blvd.
Holladay, Utah 84117
Phone: (801) 424-9088
Fax:    (801) 438-0199
ericnielson@ericnielson.com
lauranielson@ericnielson.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT,
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| ERIC H., and A.H., <br><br> Plaintiffs, <br><br> vs. <br><br> DIGNITY HEALTH, DIGNITY HEALTH PPO PLAN, and ANTHEM BLUE CROSS, <br><br> Defendants. | **COMPLAINT** <br><br> Case No. 2:21-cv-00459-JCB <br><br> Magistrate Judge Jared C. Bennett |

**COME NOW** Eric H., and A.H., individually, and through their undersigned counsel, complain and allege against the above-captioned defendants as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    Plaintiff Eric H. ("Eric") is a natural person residing in Healdsburg, California. He is covered by a self-funded plan, Dignity Health PPO, ("the Plan"), provided through Eric's employer, Dignity Health, Plan Administrator is Anthem Blue Cross.

2.    Plaintiff A.H. is a resident of Healdsburg, California. As a beneficiary of his father's health insurance plan, she received treatment at Open Sky Wilderness Therapy ("Open Sky"), a licensed residential treatment facility in Durango, Colorado from May 8, 2017, through August 2, 2017.

1

3. The Plan is an employee benefit plan governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et. seq.

4. This Court has jurisdiction over this matter and venue is appropriate pursuant to 29 U.S.C. §1132(e)(2) and 29 U.S.C. § 1391(c) the appeals were written by a company located in Salt Lake City, Utah.

5. Plaintiffs seek payment of A.H.'s denied claims from May 8, 2017, through August 2, 2017, pursuant to 29 U.S.C. §1132(a)(1)(B).

6. Plaintiffs seek injunctive relief pursuant to 29 U.S.C. §1132(a)(3) and pursuant to the Mental Health Parity and Addiction Equity Act of 2008 ("the Parity Act").

7. Plaintiffs also seek an award of prejudgment interest and attorney's fees pursuant to 29 U.S.C. §1132(g).

## FACTUAL BACKGROUND

8. A.H. was assigned female at birth but is now male.

9. A.H. was adopted from Russia when he was eight months old.

10. A.H. liked to be in charge, was very impulsive and very active. In early elementary school, on multiple occasions stole things from others at school. It appeared whatever he wanted; he took.

11. A.H. struggled to manage his anger in an appropriate manner, though he was never aggressive toward either of his parents.

12. In the 4th grade, A.H. was diagnosed with ADHD.

13. The beginning of middle school, he began taking medication to manage his ADHD.

14. During the 9th grade A.H. began drinking alcohol and using marijuana. He abused Xanax for a one-week period but stopped using it after an intervention from a friend.

**Pre-Litigation Appeal of the Plan's Denial of Coverage for A.H.'s Care**

15.    On January 11, 2018, Eric received a denial letter from the Plan, regarding the services A.H. received at Open Sky from May 8, 2017 to August 2, 2017.

16.    The denial letter stated the following: "The above noted service(s) is not a benefit covered under your health plan contract. As stated in your Member Benefits Agreement in the section titled: Definitions, and under the subsection titled Resident Treatment Center, it states: Residential Treatment Center is an INPATIENT treatment facility where the patient resides in a modified community environment and follows a comprehensive medical treatment regimen for treatment and rehabilitation as the result of a mental or nervous disorder or substance abuse. The facility must be licensed to provide psychiatric treatment of mental or nervous disorders or rehabilitative treatment of substance abuse according to state and local laws. Is/are excluded from coverage."

17.    On June 21, 2018 Eric submitted a Level One Member Appeal stating the following: "Open Sky meets our plan's definition of a Residential Treatment Center, upon receipt of Anthem's denial letter, we obtained a copy of our PPO Plan Benefit Booklet and reviewed the definition mentioned in the denial letter from Anthem Care Management, which we found on page 100. The rationale behind Anthem's denial is confusing, as Open Sky meets this definition: Residential Treatment Center is an inpatient treatment facility where the patient resides in a modified community environment and follows a comprehensive medical treatment regimen for treatment and rehabilitation as the result of a *medical or nervous disorder* or substance abuse. The facility must be licensed to provide psychiatric treatment of *mental or nervous disorder* or rehabilitative treatment of substance abuse according to state and local laws."

18. Open Sky is licensed by the state of Colorado as a Residential Child Care Facility. The State of Colorado Department of Human Services offers the following definitions with regards to Residential Child Care Facilities: "A residential childcare facility (RCCF) shall provide twenty-four (24) hour residential group care and treatment for five or more children, between the ages of three (3) and sixteen (16) years old and for children from sixteen (16)-eighteen (18) years old. Colorado Client Assessment Record (CCAR) is a clinical instrument designed to assess the behavioral and mental health status of a medically eligible client. CCAT is used to identify current diagnosis and clinical issues facing the client...This instrument is used for children...receiving mental health services in an RCCF."

19. On July 27, 2018, the Plan responded to Level One Member Appeal upholding the denial.

20. Specifically, the Plan states "According to your January 1, 2014 Dignity Health and Evidence of Coverage on page 92 under the definitions heading, it states:

> Hospital is a facility which provides diagnosis, treatment and care of persons who need acute inpatient hospital care under the supervision of physicians. It must be licensed as a general acute care hospital according to state and local laws. It must also be registered as a general hospital by the American Hospital Association and meet accreditation standards of the Joint Commission on Accreditation of HealthCare Organizations. For the limited purpose of inpatient care, the definition of hospital also includes: (1) psychiatric health facilities (only for the acute phase of a mental or nervous disorder or substance abuse), and (2) Residential Treatment Centers. A review of Open Sky Wilderness licensing and accreditation indicates that they are not licensed as a general acute care hospital nor do they meet accreditation standards of the Joint Commission on Accreditation of HealthCare Organizations. For these reasons Open Sky Wilderness is not a RTC and therefore not a covered benefit under your plan."

21. The Plan also states in this letter, "Per our medical director, the health plan's determination is not a violation of the PPACA or MHPAEA because it does not indicate that outdoor youth programs are a covered benefit for mental health or substance abuse use disorders.

4

While the initial review identified Elements as a residential treatment program, during the appeal review, we identified it as a Wilderness Program. Because treatment did not take place in a hospital setting, the service is not covered. Wilderness programs are not considered residential treatment."

## FIRST CAUSES OF ACTION

## (Claim for Benefits Under 29 U.S.C. §1132(a)(1)(B)) and Claim for Equitable Relief Pursuant to 29 U.S.C. §1132(a))

2. ERISA imposes higher-than-marketplace standards on the Plan and other ERISA fiduciaries. It sets forth a special standard of care upon a plan fiduciary, namely that the administrator discharges all plan duties solely in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing them benefits. 29 U.S.C. §1104(a)(1).

3. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that plan administrators provide a "full and fair review" of claim denials. 29 U.S.C. §1104(a)(1)(D) and §1133(2).

22. The Plan's actions or failures to act constitute a breach of its fiduciary duties to the H. Family under 29 U.S.C. §1104 and §1133 in the following ways: 1) by failing to set forth the specific reasons for A.H's claim denial, written in a manner calculated to be understood by the H. Family; 2) by failing to provide a "full and fair review," as anticipated in ERISA's claims processing regulations, of the denial of the A.H.'s claim; 3) by developing and relying upon internal practices and policies that improperly restricted coverage in contravention of Plaintiffs' health insurance plans, ERISA, and the Parity Act; and 4) by failing to discharge all plan duties solely in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing them benefits.

## SECOND CAUSE OF ACTION

### (Claim for Violation of the Parity Act)

33. The Parity Act is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the Parity Act.

34. The Parity Act requires that if a group health plan provides both medical and surgical benefits as well as mental health or substance use disorder benefits, then it may not apply any "treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant ... treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification." 29 C.F.R. § 2590.712(c)(2)(i) (amended Jan. 13, 2014); *see also* IFRs Under the Parity Act, 75 Fed. Reg. at 5413.

35. The Parity Act also requires that if a plan "provides mental health or substance use disorder benefits in any classification of benefits..., mental health or substance use disorder benefits must be provided in every classification in which medical/surgical benefits are provided." 29 C.F.R. § 2590.712(c)(2)(ii).

36. Impermissible nonquantitative treatment limitations under the Parity Act include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity, restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A) and (H).

37. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for A.H.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does the Plan exclude or restrict coverage of medical/surgical conditions

based on medical necessity, geographic location, facility type, provider specialty, or other criteria in the manner the Plan excluded coverage of treatment for A.H. at Open Sky.

38. Specifically, the Plan's reviewers utilized internal processes and procedures that may have placed a limitation on the scope of services available for intermediate behavioral health care, while not limiting the scope of services available for intermediate medical or surgical benefits.

33. When the Plan receives claims for intermediate-level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice. The Plan evaluated A.A.'s mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

34. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

35. The violations of the Parity Act by the Plan give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

36. A declaration that the actions of the Defendants violate the Parity Act;

37. An injunction ordering the Defendants to cease violating the Parity Act and requiring compliance with the statute;

38. An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with the Parity Act;

39. An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of the Parity Act;

40. An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of the Parity Act;

41. An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

42. An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of the Parity Act; and

43. An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of the Parity Act.

44. 45. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

**RELIEF**

45. WHEREFORE, the Plaintiffs seek relief as follows:

46. Judgment in the total amount that is owed for A.H.'s medically necessary treatment at Open Sky under the terms of the Plan, plus pre- and post-judgment interest to the date of payment;

47. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

48. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

49. For such further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 27th day of July 2021.

                                        G. ERIC NIELSON & ASSOCIATES
                                        */s/ Laura Nielson*
                                        Laura Nielson

                                        *Attorney for Plaintiff*